IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

## OPINION AND ORDER

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-205-wmc
JOHN DOE subscriber
assigned IP address 24.183.51.58
                               Defendant.

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-207-wmc
JOHN DOE subscriber
assigned IP address 71.13.250.95
                               Defendant.

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-208-wmc
JOHN DOE subscriber
assigned IP address 71.87.100.125
                               Defendant.

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-209-wmc
JOHN DOE subscriber
assigned IP address 98.125.121.178
                               Defendant.

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-315-wmc
JOHN DOE subscriber
assigned IP address 24.177.123.74
                               Defendant.

---

MALIBU MEDIA LLC,
v.                             13-cv-317-wmc
JOHN DOE subscriber
assigned IP address 24.183.92.115
                               Defendant.

---

MALIBU MEDIA, LLC,
                               Plaintiff,
v.                             13-cv-318-wmc
JOHN DOE subscriber
assigned IP address 24.196.90.111
                               Defendant.

---

MALIBU MEDIA, LLC,
                               Plaintiff,
v.                             13-cv-319-wmc
JOHN DOE subscriber
assigned IP address 66.168.17.59
                               Defendant.

---

MALIBU MEDIA, LLC,
                               Plaintiff,
v.                             13-cv-320-wmc
JOHN DOE subscriber
assigned IP address 71.10.117.251
                               Defendant.

---

MALIBU MEDIA, LLC,
                               Plaintiff,
v.                             13-cv-321-wmc
JOHN DOE subscriber
assigned IP address 71.90.19.244
                               Defendant.

---

MALIBU MEDIA LLC,
                               Plaintiff,
v.                             13-cv-322-wmc
JOHN DOE subscriber
assigned IP address 97.86.116.18
                               Defendant.

On May 28, 2013, Magistrate Judge Crocker ordered plaintiff Malibu Media to show cause why this court should not issue Rule 11(b) sanctions for its regular practice of attaching an apparently unrelated and embarrassing "Exhibit C" to the complaints in each of the above-captioned copyright infringement cases.   (Order (dkt. #6).) Specifically, each of these exhibits purports to include titles of other movies *not* subject to plaintiff's copyright, but downloaded by the as yet anonymous defendant and chosen by plaintiff to embarrass and harass to leverage settlement.   While plaintiff offers at least colorable justifications for attaching these lists, the court is unconvinced, concluding that the intent was to harass and intimidate defendants into early settlements by use of the salacious nature of others' materials, rather than the merit of its own copyright claims. Accordingly, the court will sanction plaintiff's counsel $200 per case.


BACKGROUND

In recent months, plaintiff Malibu Media, a purveyor of so-called adult films, has joined many others in bringing lawsuits in federal courts against anonymous defendants, who are alleged to own internet addresses associated with the unlawful distribution of copyrighted materials by use of an online "BitTorrent protocol" service in violation of federal copyright law 17 U.S.C. §§ 101 et seq.  *See TCYK v. Does 1-13,* 13-cv-296-wmc (dkt. #14).   Apparently, the lewd and obscene nature of the graphic titles and content are enough to persuade many initially anonymous defendants to reach early settlements out of fear of being "outed" should the lawsuit proceed.  *See Malibu Media, LLC v. Reynolds*, 2013 U.S. Dist. LEXIS 31288 at *18-23 (discussing cases that have recognized

the power of lawsuits alleging illegal downloading of pornographic movies "to shame defendants into settlement agreements where they may otherwise have a meritorious defense").

In each of the lawsuits at issue here, Malibu Media and its counsel chose not to rely on the relatively tame names given its own pornographic material downloaded by defendants, but instead attached to the complaint an "Exhibit C," comprising a list of the numerous other files downloaded to that targeted address via BitTorrent in the preceding several months. Malibu Media concedes it holds no copyright on any of these other downloaded files listed in "Exhibit C," meaning they have no direct relevance to its own copyright claims. Particularly troubling to the court, the list on Exhibit C consistently includes far more disturbing lewd, unusual and unredacted titles of pornographic films allegedly also downloaded by the defendant than those belonging to plaintiff. For example, Malibu Media titles include "Red Satin," "Dreams Come True" and "Tuesday Morning," while the titles in Exhibit C include "[Bestiality] Young Blond ... Dog (www.sickporn.in)," "Lada.Nice ... Young.Girl" and "Dirty ... Stories 5." This pattern repeats itself between the titles copyrighted by plaintiff in Exhibit B and those for which plaintiff holds no copyright in Exhibit C for each of the eleven cases captioned above.

Recognizing that the attachment serves no pleading purpose and appears calculated principally to harass defendants in violation of Fed. R. Civ. P. 11(b), Judge Crocker issued an order to show cause why counsel should not be sanctioned. Amicus Electronic Frontier Foundation ("EFF") got wind of this order and, given its unique insights and interests, received this court's permission to file its own brief in support of

sanctions.  Malibu Media responded directly to Judge Crocker's initial order to show cause and was allowed to file a separate brief in opposition to EFF's amicus submission.


OPINION

### I.  Justification for Attaching "Exhibits C"

Plaintiff's counsel vigorously defends the decision to monitor and compile the entire BitTorrent history for a suspect IP address, explaining its legitimate litigation purposes.  What counsel has failed to explain, however, is good reason for ever filing a comprehensive and unfiltered list of downloads in the public record, much less as an attachment to the original complaint.

Plaintiff's proffered reasons for submitting the list as an attachment to the complaint can be summarized in four points, though none survive scrutiny.  *First*, plaintiff maintains that experience from previous lawsuits has taught it that the defendant IP address owner will often protest that someone else (a houseguest, neighbor, hacker, etc.) committed the infringing acts using the defendant's Internet service. Malibu Media contends that attaching a detailed list of distributed materials to the complaint will either (1) demonstrate the futility of raising the "not me" defense by showing a catalog of downloaded files that can all be matched with the defendant's lifestyle and hobbies; or (2) provide additional details about the Internet use that will allow an innocent defendant to pinpoint the person responsible for the copyright infringement.  By showing the strength of its hand at the outset, therefore, Malibu Media

would appear to be pursuing legitimate litigation goals:  acquiescence from the guilty and assistance from the innocent.

The problem lies in the fact that Malibu Media could achieve these same results by pleading that it has a much more comprehensive list of materials and, if a defendant refuses to acquiesce or assist, providing the actual list to him or her directly and confidentially.  *Malibu Media v. Tashiro*, 2013 U.S. Dist. LEXIS 125897 at *7.  Even if one accepts Malibu Media's contention that attaching it to the complaint is more efficient because it achieves the same result in one step, this does not explain its failure: (1) to file the exhibit under seal or (2) redact the most salacious and embarrassing titles. Not only would this avoid the obvious risk of extorting unreasonable settlements, it would be consistent with the rules of evidence, which almost certainly would exclude on prejudice grounds the admissibility of any of these outrageous titles, whatever marginal, probative value they may arguably have.   Nothing is gained by filing this document publicly in unredacted form, except to harass and embarrass defendants into early settlements.

*Second*, Malibu Media says that the list lends "detail" to the complaint, insuring against a potential Rule 12(b)(6) motion to dismiss for failure to plead a plausible claim under Rule 8(a)(2).  This argument is specious.  As decisions by this and other federal courts underscore, the complaints filed are easily specific enough to survive a motion to dismiss on plausibility grounds without the addition of Exhibit C.  Indeed, Malibu Media concedes that in all of the cases it has filed it "has never had a case dismissed pursuant to

Fed. R. Civ. P. 12(b)(6)" with or without the attachment of an exhibit of this kind. (Dkt. #18, at 18.)

Equally disingenuous, Malibu expresses concern that it may actually face Rule 11 sanctions if it does *not* attach a list of additional copyright violations. For this dubious proposition, counsel points to a case from the Central District of California -- *Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48. Unlike every case before this court, the plaintiff in *Ingenuity* did *not* sue the owner of the IP address associated with the copyright infringement, but instead named another person in the same household. The judge criticized the plaintiff for failing to allege a reasonable basis for singling out that *particular* defendant. In such a situation, there would at least be an arguable reason to attach a list of downloads that tended to support the likelihood that the individually-name defendant was indeed the cause of the infringement (e.g., a Notre Dame graduate who downloaded every one of its copyrighted football broadcasts), but this provides no reason for including even more embarrassing titles than those copyrighted by Malibu Media itself. Moreover, there is *no* similar concern in the mine run of cases, where the owner of the IP address is the defendant's alone, as is alleged here.

If anything, plaintiff counsel's third and fourth justifications have even less merit than the first two. Malibu Media argues that in "making Exhibit C a part of the complaints, defendants must either admit or deny the allegations" and a "denial will enable [Malibu Media] to impeach a defendant later in the case." Similarly, Malibu Media argues that because pleadings frame the boundaries of discovery, more expansive pleadings will allow for more expansive discovery. Both of these arguments are belied by

the fact that the complaints expressly state that the "Copyrights-in-Suit are solely limited to content owned by Plaintiff as outlined in Exhibit B" and that "Exhibit C is provided for evidentiary purposes only." (*See, e.g.*, 13-cv-205-wmc, dkt. #1, at ¶23.)  Based on this allegation -- the only time Exhibit C is ever mentioned in the complaint -- a defendant need not "admit or deny" any aspect of Exhibit C.   If anything, plaintiff counsel's pleading seems intent on keeping Exhibit C *out* of the substantive pleadings.   Even if there were merit in either excuse, they would be readily addressed by serving a less public request to admit and relying on the already-expansive definition of permissible discovery under Fed. R. Civ. P. 26(b), rather than outrageous disclosures of little or no relevance and obvious prejudice in a public exhibit to the complaint.

## II. Lack of Intent to Harass

Even if attaching "Exhibit C" was unnecessary to further any litigation goals (other than harassing defendants into early settlement), Malibu Media maintains that the decision to do so was at the very least reasonable and not motivated by ill intent.   To this end, Malibu Media has filed a declaration of one of its owners expressly attesting to the fact that "Exhibit C is *not* attached to complaints for the purpose of harassing defendant." (Dkt. #18-2, at 3.)  Counsel further points out that Malibu Media has never opposed a defendant's motion to proceed anonymously, suggesting that this is strong evidence weighing against any inference that attaching Exhibit C was part of a campaign to harass or extort.

While the court agrees with Malibu Media that there is only circumstantial evidence of ill intent, Malibu Media's denials do not pass the smell test, and any denial of improper motive by its counsel does not pass the laugh test.  For the reasons described above, there exists no good basis upon which a reasonable attorney -- subject to the ethical rules and restrictions of Rule 11 -- could conclude that attachment of Exhibit C to a complaint "for evidentiary purposes only" served any *legitimate* purpose at that stage of the litigation.

Rule 11 provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . .

Fed. R. Civ. P. 11(b).  The Seventh Circuit has previously explained that "it is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law."  *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv's, Inc.*  9 F.3d 1263, 1270 (7th Cir. 1993).  Accordingly, even if this court is unable to conclude definitively that the attorney *subjectively* thought that he or she was engaging in harassment, sanctions may be warranted where an objectively reasonable attorney should know that:  (1) there is no real need to take a given litigation action; *and* (2) the action would substantially harass or embarrass the opposing party.

Sanctions are an extreme measure in any case.  As the Seventh Circuit Court of Appeals explained in *FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440 (7th Cir. 1988):

> While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution. Even where, as here, the monetary penalty is low, a Rule 11 violation carries intangible costs for the punished lawyer or firm. A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter. We may not impugn the reputation without carefully analyzing the legal and factual sufficiency of the arguments.

*Id*. at 444.

Even so, these internet copyright infringement cases already give off an air of extortion, albeit legitimate since (at least as alleged) each "John Doe" defendant *did* violate plaintiff's copyrights.  (Order (dkt. #6) pp. 2-3.)  Counsel enforcing these rights for purveyors of *pornographic* films (even "classy" ones) by suing initially anonymous defendants must already be aware that these cases are fraught with circumstances that could embarrass the putative defendant should they become public and strongly influence his or her decision to settle even a meritless suit just to make the case go away before being publicly associated with their client's film.  *Id*.

This should be enough.  The court's subpoena power may not be leveraged further by counsel to force earlier, larger settlements through explicit references to the alleged misuse of even more outrageous or potentially embarrassing materials copyrighted by a non-client.  Accordingly, a sanction will be issued against plaintiff's named counsel and her law firm, jointly, for each time Exhibit C was attached to a complaint and publicly filed in this court.

ORDER

IT IS ORDERED that:

1) in its current form, Exhibit C is struck from the complaint in each of the above-captioned cases and counsel for plaintiff Malibu Media, Inc. is sanctioned $200 in each of the above captioned cases for a total of $2,200, to be paid to the clerk of court;

2) the stays previously entered in each of these cases are lifted;

3) Malibu Media may have an additional ninety (90) days to take discovery from ISPs and accomplish service in each of these cases, although no further extension will be granted absent good cause shown; and

4) plaintiff may now communicate or contact any Doe household it has identified through ISP information

Entered this 10th day of September, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge